IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JEANETTE FAUVER,

    Plaintiff,

vs.

MICHAEL ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C10-1004

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I.*    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PRIOR PROCEEDINGS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *PRINCIPLES OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*  *FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.*    *Fauver's Education and Employment Background.* . . . . . . . . . . . . 5
    *B.*    *Administrative Hearing Testimony.* . . . . . . . . . . . . . . . . . . . . . . . 5
        *1.*    *Fauver's Testimony.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*    *Vocational Expert's Testimony.* . . . . . . . . . . . . . . . . . . . . . 6
    *C.*    *Fauver's Medical History.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*V.*   *CONCLUSIONS OF LAW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A.*    *ALJ's Disability Determination.* . . . . . . . . . . . . . . . . . . . . . . . . 11
    *B.*    *Objections Raised By Claimant.* . . . . . . . . . . . . . . . . . . . . . . . . 13
        *1.*    *Dr. Smith's Opinions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        *2.*    *Credibility Determination.* . . . . . . . . . . . . . . . . . . . . . . . . 15

*VI.*  *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*VII.* *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Jeannette L. Fauver on March 1, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Fauver asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Fauver requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

On March 5, 2007, Fauver applied for both disability insurance benefits and SSI benefits. In her applications, Fauver alleged an inability to work since January 1, 2002 due to panic attacks and an inability to "be around people." Fauver's applications were denied on July 12, 2007. On October 3, 2007, Fauver's applications were denied on reconsideration. On November 6, 2007, Fauver requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 1, 2009, Fauver appeared via video conference with her attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Fauver and vocational expert Elizabeth M. Albrecht testified at the hearing. In a decision dated May 29, 2009, the ALJ denied Fauver's claim. The ALJ determined that Fauver was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing her past work as a home health aide. Fauver appealed the ALJ's decision. On January 8, 2010, the Appeals Council denied Fauver's request for review. Consequently, the ALJ's May 29, 2009 decision was adopted as the Commissioner's final decision.

On March 1, 2010, Fauver filed this action for judicial review. The Commissioner filed an Answer on April 30, 2010. On June 2, 2010, Fauver filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she could perform her past work as a home health aide. On July 29,

2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 7, 2010, Fauver filed a reply brief. On March 24, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by 'substantial evidence on the record as a whole.'" *Heino v. Astrue*, 578 F.3d 873, 878 (8th Cir. 2009) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*,

393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Fauver's Education and Employment Background

Fauver was born in 1979. She completed the ninth grade. She earned her GED, but it took her "a couple" of years because she had "a hard time getting to class and stuff and being able to stay there."[1] Fauver testified that while in school, she was not placed in any special education classes, but she was placed in a "counseling class" due to aggressiveness and not attending school. She denies having difficulties with reading, writing, and arithmetic.

The record contains a detailed earnings report for Fauver. The report covers Fauver's employment history from 1985 to 2008. According to the report, Fauver first worked in 1994. From 1994 to 2002, Fauver earned between $185.35 (1996) and $4,599.53 (1998). She has no earnings since 2003.

### B. Administrative Hearing Testimony

#### 1. Fauver's Testimony

At the time of the administrative hearing, the ALJ asked Fauver why she was unable to work. Fauver responded that:

> It seems like my anxiety or panic is -- I can't focus on anything except for the one thing that's causing my panic and anxiety. And all's I can do is just sit there and think about it. I can't perform any kind of activity at all. It's constantly thinking.

(Administrative Record at 55.) Due to her anxiety, Fauver testified that other than taking her children to school, she leaves the house about once every two weeks. Specifically, Fauver testified that:

> Q: You leave the house about once every two weeks?
> A: Yeah. It kind of depends like with the school and if I have any doctor's appointments. And sometimes I miss

---

[1] *See* Administrative Record at 47.

> my doctor's appointments because I just can't get out of
> the house.
> Q: Okay. So the only reason you leave the house is for
> doctor's appointments?
> A: Yeah. Just basically for my kids. Survival reasons.
> Q: And your mother does the shopping for you?
> A: She does.
> Q: And prior to your husband's death, he did the shopping
> for you?
> A: He did.

(Administrative Record at 71.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who:

> has no exertional limitations, but does have some non-exertional limitations as follows. There should be no driving as a requirement of the job. The person should avoid even moderate exposure to hazards such as moving machinery or unguided heights. The person cannot do production rate pace work such as fast paced assembly line, but rather goal oriented work. The person is limited in being able to work around a small number of people. I'll refine that as two to five people, but no more than that.

(Administrative Record at 78.) The vocational expert testified that under such limitations, Fauver could perform her past work as a home health aide.

Fauver's attorney also questioned the vocational expert. Fauver's attorney inquired whether "an individual that, due to anxiety disorder panic attacks, was unable to work outside a highly protective and structured environment such as her home, would that individual be able to do any past relevant work?"[2] The vocational expert testified that under such limitations, Fauver could not perform her past relevant work. The vocational

---

[2] *See* Administrative Record at 81-82.

expert further testified that under such limitations, Fauver would also be precluded from competitive employment.

## C. Fauver's Medical History

In as letter dated February 27, 2007, Dr. Andrew C. Smith, M.D., Fauver's primary care physician, opined that Fauver:

> has a history of chronic anxiety disorder and panic attacks. She has had a history of panic attack leading to a seizure in the past. She has had marked intolerance to being in a crowded situation. She has social anxiety, generalized anxiety, and situational anxiety. She requires medications to control these symptoms and has been taking these chronically for some time.

(Administrative Record at 456.) Dr. Smith concluded that Fauver's anxiety problems cause her to be disabled "in that she is unable to really work in any type of environment outside her home[.]"[3]

On April 18, 2007, Fauver underwent a psychological evaluation performed by Dr. Paul Schroeder, Ed.D. Dr. Schroeder noted that Fauver suffers from anxiety and a panic disorder. She also reported some obsessive compulsive symptoms. Dr. Schroeder administered the MMPI-II test to Fauver. Dr. Schroeder found that Fauver produced a valid profile, "but she may have exaggerated some of her symptoms. She showed some inconsistency in the latter part of the test, which makes the content scales questionable in terms of their validity."[4] Based on the test results, Dr. Schroeder opined that:

> Individuals with this type of profile show feelings of inferiority and insecurity, as well as low self-confidence and poor self-esteem. These individuals typically feel guilty about their perceived failures, withdrawal from activity, and emotional apathy are also likely. [Fauver] is not likely to be very involved with other people. She may view others as suspicious, and she is not likely to have a good deal of trust in

---

[3] See Administrative Record at 456.

[4] Id. at 457.

7

> others. . . . [Fauver] is probably most comfortable when she
> is alone. She may resent demands that are placed upon her,
> and may have difficulty with moodiness, irritability, and
> negativism. . . . [Fauver] may have difficulty with attention
> and memory, as well as concentration. . . . These individuals
> tend to withdraw into fantasies and daydreaming, and tend to
> react to stress and pressure by regressing.

(Administrative Record at 457.) Dr. Schroeder diagnosed Fauver with panic disorder with agoraphobia and obsessive compulsive disorder.

On August 22, 2007, Dr. Smith provided the Social Security Administration a letter regarding Fauver's functional capabilities. In the letter, Dr. Smith noted that Fauver suffers from chronic anxiety. She takes anti-psychotic, anti-depressant, and anti-anxiety medication to help control her anxiety. Dr. Smith opined that:

> As far as [Fauver's] ability to understand instructions,
> procedures, and locations, I think she would be able to follow
> instructions, get to a place of employment without difficulty.
> I am not sure how good she is at following through. She
> definitely misses appointments frequently here. Her ability to
> maintain attention, concentration, and pace I think would be
> limited. She does not seem to have clear thought process. . . .
> She appears to be fairly appropriate in her contact with people
> in general, however, I think if someone was confronting her or
> stressing her she would have some difficulty with this. . . .
> I think her ability to respond to change is also limited as she
> basically responds to any kind of change with withdrawal type
> response. I think she is capable of handling her own benefits,
> she is just not one that is very public or able to interact with
> the public well. In summary, I believe [Fauver] is limited in
> her ability to cope with dealing with life's stressors. I think
> perhaps some type of job involving no stress would be possible
> for her but just having someone telling her what to do would
> be a challenge for her.

(Administrative Record at 501-02.)

On September 11, 2007, Fauver was referred to Dr. Thomas R. Anderegg, Ph.D., by Disability Determination Services ("DDS") for a mental status evaluation. Fauver

reported to Dr. Anderegg that she suffers from "intense" anxiety. She indicated that it is "very difficult" for her to go to stores by herself. She stated that her anxiety has led to some agoraphobia, and she does not like to leave her house. Fauver also reported having seizure-like activity since 2002. She described the seizures as grand mal and acknowledged that "one of her doctors believes that she has epilepsy but another doctor thinks that the seizures are part of her panic disorder."[5] Dr. Anderegg summarized Fauver's activities of daily living:

> [Fauver] indicates that she gets out of bed around 6:15 every morning. She gets her children off to school. She often will go back to bed for a couple of hours. She will then spend the rest of the day cleaning the house and watching television. She cooks the meals and does the laundry. She is capable of doing her own hygiene. . . . She puts the kids to bed around 8:00 or 8:30 at night. She will then stay up until around 10:30.

(Administrative Record at 538.) Upon examination, Dr. Anderegg diagnosed Fauver with panic disorder with agoraphobia, borderline personality traits, obsessive compulsive traits, and seizure disorder by history. Dr. Anderegg concluded that:

> Ms. Fauver is capable of remembering simple instructions, procedures, and locations. She would require some repetition in order to remember more complex instructions. She does have some mild problems with concentration and attention; however, it appears that once instructions are well learned, she can carry them out reliably. Work pace appears to be in the normal range. This individual's anxiety would interfere to a marked degree with her ability to interact appropriately with supervisors, co-workers, and the public. Her judgment is intact. She is capable of responding appropriately to changes in the work place.

(Administrative Record at 540.)

---

[5] *See* Administrative Record at 538.

9

On September 12, 2007, Dr. Gary Cromer, M.D., reviewed Fauver's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Fauver. Dr. Cromer found no exertional, postural, manipulative, visual, or communicative limitations. Dr. Cromer determined that Fauver should avoid all hazards.

On September 26, 2007, Dr. Carole Kazmierski, Ph.D., reviewed Fauver's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Fauver. On the Psychiatric Review Technique assessment, Dr. Kazmierski diagnosed Fauver with panic disorder with agoraphobia, personality disorder, and polysubstance abuse. Dr. Kazmierski determined that Fauver had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Kazmierski determined that Fauver was moderately limited in her ability to: perform activities within a schedule, maintain regular attendance, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. Dr. Kazmierski concluded that:

> [Fauver] is capable of performing a range of daily activities. Cognitive functioning is generally intact, and [doctors] noted only mild problems with attention or concentration. [Fauver] is not homebound. [Fauver] does report difficulty going out in public, but she does acknowledge going to restaurants and movies, though she states that she goes 'rarely.' She recently completed classes for her GED. Although she is ill suited for work requiring significant public contact, she does appear able to tolerate brief, superficial dealings with others when it is in her own interests to do so. [Fauver's medical records support]

moderate restrictions in social functioning as indicated on this [mental RFC].

(Administrative Record at 553.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Fauver is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and

11

work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Fauver had not engaged in substantial gainful activity for the period of January 1, 2002 through June 30, 2002,[6] or the period from February 20, 2007 to the present.[7] At the second step, the ALJ concluded from the medical evidence that Fauver had the following severe combination of impairments: panic disorder with agoraphobia, borderline personality traits, obsessive compulsive disorder, and history of polysubstance abuse. At the third step, the ALJ found that Fauver did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Fauver's RFC as follows:

> [Fauver] has [] the residual functional capacity to perform a full range of work at all exertional levels but with the

---

[6] In order to be eligible for disability insurance under Title II, a claimant must meet the insurance requirements of the statute. *See* 42 U.S.C. § 416; *see also Davidson v. Astrue*, 501 F.3d 987, 989 (8th Cir. 2007) ("'When an individual is no longer insured for Title II disability purposes, we will only consider her medical condition as of the date that she was last insured.' *Long* [*v. Chater*], 108 F.3d [185,] 187 [(8th Cir. 1997)]."). Fauver's insured status expired on June 30, 2002. Because her alleged disability onset date is January 1, 2002, the ALJ limited her consideration of whether Fauver was disabled to the time period of January 1, 2002 to June 30, 2002.

[7] For purposes of her Title XVI claim, Fauver must establish that she was disabled during the period of time that her application was pending, beginning on the date she filed her claim. *See* 20 C.F.R. § 416.330. Fauver protectively filed her application for SSI benefits on February 20, 2007. Her official application is dated March 5, 2007, but the ALJ considered whether she was disabled for purposes of SSI benefits from the date she protectively filed her application in February.

12

> following nonexertional limitations: there should be no requirement to drive on the job. Additionally, [Fauver] needs to avoid even moderate exposure to hazards, such as moving machinery, and unprotected heights. The work should not require production-rate pacework, but rather goal oriented work. She is limited to working around a small number (two to five) of people, whether the public or co-workers.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that Fauver was capable of performing her past work as a home health aide. Therefore, the ALJ concluded that Fauver was not disabled.

### B. Objections Raised By Claimant

Fauver argues that the ALJ erred in two respects. First, Fauver argues that the ALJ failed to properly weigh the opinions of her treating physician, Dr. Smith. Second, Fauver argues that the ALJ failed to properly evaluate her subjective allegations of disability.

#### 1. Dr. Smith's Opinions

Fauver argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Smith. Specifically, Fauver argues that the ALJ's reasons for discounting Dr. Smith's opinions are not supported by substantial evidence on the record. Fauver maintains that this matter should be reversed and remanded for further consideration of the opinions of Dr. Smith.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

13

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In her decision, the ALJ thoroughly addressed and considered the opinions of Dr. Smith. Specifically, the ALJ determined that:

> [T]he opinion of Dr. Smith carries very little weight. First of all, a conclusion as to disability is an issue reserved to the Commissioner. Additionally, Dr. Smith is not a mental health expert, but a general practitioner, and he is offering opinions that are outside his range of expertise. Most importantly, however, is that his conclusions are not supported by his own medical treatment records, which do not show such limitations were reported by [Fauver] over the years. . . . Additionally,

14

> the undersigned notes that Ms. Fauver stopped mental health counseling two years earlier and she admits her psychotropic medications stabilize her conditions.

(Administrative Record at 16-17.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Smith. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Smith's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Credibility Determination*

Fauver argues that the ALJ failed to properly evaluate her subjective allegations of disability. Fauver maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Fauver's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective

claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Fauver's] medically determinable impairments

16

could reasonably be expected to cause the alleged symptoms; however, [Fauver's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. [Fauver] takes psychotropic medications which stabilize her. Despite her allegations of panic disorder, Ms. Fauver testified that she has not had to take medication for that in a while. Despite her allegations of staying home, Ms. Fauver testified that she drives [her] kids to the school bus stop or school, up to 30 miles each way, once a day, or more, attends school functions, and keeps medical appointments. [Fauver] maintains a household for three young children, which is physically and emotionally taxing, with minimal help from others. Results of her MMPI were valid, but found to be exaggerated. [Fauver's] testimony is less than credible. She testified she was a 'common law' wife, married to David Herman, father to one of her children. Mr. Herman was shot and killed in November 2008, but before that, they lived together for seven years. She reported that he did all the shopping and took care of the children. But, the medical evidence shows [Fauver] consistently referred to her 'partner,' 'significant other,' or 'boyfriend,' at that time. She did not list him as living in her household on her Title XVI application. At the hearing, [Fauver] testified that she filled [sic] this application during a period of separation, but considering her failure to amend that application when, by her testimony, Mr. Herman returned to the household in a scant two weeks, that testimony strains credulity. There is no independent verification that Mr. Herman did all the household chores and all the child-rearing tasks up until his death. Moreover, the involvement of the Iowa Department of Human Services at two separate times, for rather lengthy periods of time, would indicate that [Fauver] was held responsible for maintaining a proper household with appropriate care for her children. . . .

Ms. Fauver has full activities of daily living, as described above. She cares for three children, and goes out when she wants to and as is necessary. . . . She is able to drive, drives many miles a week[], and takes care of her personal hygiene.

> Ms. Fauver was not able to identify disabling side effects from medication. She indicated that one medication made her tired, but she took it at night and wakes up feeling rested. . . .
>
> Additionally, [Fauver] has minimal work history prior to her alleged date of onset, with only one year of earnings above $4,000.00 and most years less than $1,000.00, which raises a question as to whether [Fauver's] continuing unemployment is actually due to medical impairments. Moreover, while [Fauver] has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in [Fauver's] favor, the record also reveals that the treatment has been quite successful in controlling those symptoms.

(Administrative Record at 18-19.)

It is clear from the ALJ's decision that she considered and discussed Fauver's treatment history, medical history, functional restrictions, effectiveness and side effects of medications, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Fauver's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Fauver's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## *VI. CONCLUSION*

The Court finds that the ALJ properly weighed, considered, and addressed the opinions of Fauver's treating physician, Dr. Smith. The ALJ also properly determined Fauver's credibility with regard to her subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 1st day of October, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA